IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW BENTON, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ATLANTIC DISMANTLING AND SITE | : | |
| CONTRACTOR'S CORP., et al. | : | NO. 11-CV-6115 |

## MEMORANDUM

Ditter, J.                                                                January 16, 2014

Before me is defendant Michael Donato's motion for relief pursuant to Federal Rules of
Civil Procedure 55(c) and 60(b) from the default judgment entered against him.  For the reasons
discussed below, I will grant that motion.

### I.      BACKGROUND

The plaintiffs, Andrew and Sarah Benton, filed this action on September 28, 2011,
against Donato, Donato's former employer, Atlantic Dismantling and Site Contractor's Corp.
("Atlantic") and its related entities, and several former employees of Atlantic, including
Atlantic's founder and President, Joseph Montalto, its Chief Financial Officer, Erik Perry, Senior
Vice President, Salvatore Tecce, and Controller, Hugo Arloro.  Donato was Atlantic's Vice
President of Operations during the time period relevant to the complaint.  The complaint
describes allegations of a fraudulent scheme involving two loans made by the Bentons to
Atlantic in 2010 totaling $250,000.  *Compl*. ¶¶ 31-35, 39.  According to the complaint, as a result
of the defendants' fraud, the Bentons have only received partial interest payments on their loans
and are owed the entire principal of the loans plus thousands of dollars in interest.  *Id.* ¶ 62.  The
relevant counts in the complaint against the individual defendants include Count V (negligent

misrepresentation), Count VI (intentional misrepresentation), Count VII (fraud), and Count VIII (Racketeer Influenced and Corrupt Organizations Act ("RICO")).[1]

Donato was served with the complaint, to which he has never filed any response, on January 24, 2012.  *See* Dkt. 11.  The Bentons filed notices and stipulations of voluntarily dismissal without prejudice pursuant to Federal Rules of Civil Procedure 41(a)(1)(A)(i) and 41(a)(1)(A)(ii) as to all of the defendants except for Donato.[2]  Plaintiffs then filed a motion for default judgment against Donato on September 21, 2012, and default judgment was entered against him on September 25, 2012, by the Honorable Michael M. Baylson.  A hearing on damages was held on October 10, 2012, and final judgment entered against Donato in the amount of $223,500.  That judgment was later amended to allow for treble damages, bringing the total to $688,458.  Donato contends that he had no notice of the default proceedings, and as a result, he did not file any opposition to the motion for entry of default, appear for the hearing on damages, or file any papers regarding the assessment of damages.  Indeed, Donato did not file anything until the instant motion on July 12, 2013.

## II.   DISCUSSION

Default judgments are not favored and doubtful cases ought to be resolved in favor of the party moving to set aside default judgment in order to decide the case on its merits.  *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984).  A court may set aside a default judgment for the reasons set forth under Federal Rule 60(b), including "excusable neglect" or "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1), (b)(6).

---

[1] Counts I through IV, which alleged breach of contract and unjust enrichment pertaining to the Bentons' two loans, were brought against only the corporate defendants.

[2] According to the plaintiffs, Erik Perry, who never appeared in the case, has left the country and his whereabouts are unknown.  Atlantic Dismantling filed for Chapter 7 bankruptcy on October 5, 2012 – shortly after the plaintiffs filed their notices of dismissal and motion for default judgment against Donato.  *See Plaintiffs' Opposition to Defendant Michael Donato's Motion for Relief from Default Judgment ("Pls.' Resp.")*, Exh. A.

I must consider the following factors in my decision to set aside a default judgment: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. *$55,518.05 in U.S. Currency*, 728 F.2d at 195.

To begin with, I find that the default judgment was entered not as a result of Donato's culpable conduct but because of excusable neglect. At the time he was served with the complaint in January 2012, Donato was no longer working for Atlantic or its affiliates, but was employed at Millenium Equities Group. *Donato Aff.* ¶ 15. He was served personally with the complaint at the address of that business. Donato claims that he contacted his former colleague, Salvatore Tecce, as soon as he received the complaint because he "had no idea who the Bentons were or what they were suing about." *Id.* ¶ 17. According to Donato, Tecce told him that Atlantic's counsel was handing the case and that Donato should not worry about it. *Id.* ¶ 18. Donato believed that his former employer was taking care of the matter, and as a result, he did not file a response or appear before this court, prior to filing the instant motion.

Moreover, Donato claims that he did not receive notice of the motion for default, the default judgment entered against him, or the notice of the hearing on damages, all of which were mailed to a former address between September and November 2012. *Id.* ¶¶ 20-22. Donato explained that his then employer, Millenium, moved from the place where he worked when he was personally served with the complaint in January 2012, and that location was never Millenium's mailing address anyway. *Id.* ¶ 19. Consequently, Donato had no knowledge of the motion for default, or the default judgment and damages assessed against him, until he was personally served, on May 28, 2013, with a motion for a preliminary injunction related to the

action brought by the Bentons in Massachusetts state court seeking to attach Donato's assets.[3] *Id.* ¶ 23; *Pls.' Resp.* at 4.  Donato filed the motion to vacate the judgment against him on July 12, 2013.

The Bentons argue that it is beyond reason for someone to learn of a lawsuit of this magnitude, consult with a "non-lawyer friend" and then be satisfied with said friend's advice not to worry about it.  *Pls.' Resp.* at 7.  Accordingly, they argue that Donato's reaction to the complaint is incredulous, or at best, "the very definition of reckless disregard" since he failed to consult an attorney or follow up with anyone regarding the progress of the case.  The Bentons also contend that even after Donato claims to have first learned of the default judgment, his delay of six weeks in filing the instant motion was unreasonable.

I find that Donato's explanation for his failure to respond to the Bentons' lawsuit is supported by the affidavit signed by Tecce and is, in fact, reasonable.  *See Tecce Aff.* ¶ 4-6 (attesting that he believed company counsel was handling the matter on behalf of all the individual defendants except Perry, he conveyed that belief to Donato, and he told him not to worry about it).  Additionally, Donato's filing of the present motion six weeks after discovering the default judgment was sufficiently prompt, particularly in light of the fact that he also had to defend himself against the plaintiffs' preliminary injunction in Massachusetts and obtain an affidavit from Tecce.

Next, I examine whether Donato has a meritorious defense to the allegations found in the complaint.  "The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (internal citations omitted).

---

[3] The Massachusetts court denied the Bentons' request for preliminary injunction two weeks after the request was filed.  *Pls.' Resp.* at 4-5.

Counts V, VI and VII allege that the individual defendants, including Donato, made misrepresentations of material fact regarding Atlantic's financial condition (including ability to repay the loans with interest and the profitability of the company's alleged projects), that those statements were false when made, and that they induced plaintiffs to make the loans. The Bentons contend that the defendants failed to exercise reasonable care to ensure the accuracy of the statements (negligent misrepresentation), or that the defendants knew when they made the statements that they were false, or were reckless as to whether they were true or false (intentional misrepresentation and fraud).

Count VIII, setting forth a claim for violation of the civil RICO provisions under 18 U.S.C. § 1964(c), alleges that the individual defendants, as part of an enterprise (i.e., Atlantic), "conducted or participated in, directly or indirectly, the enterprise's affairs through a 'pattern of racketeering activity,'" with that predicate racketeering activity alleged to be two or more violations of the mail and wire fraud statutes. *Compl.* ¶¶ 122-23; *see also* 18 U.S.C. § 1962(c); *id.* § 1961(1) (defining "racketeering activity" to include acts indictable under the mail or wire fraud statutes); *id.* § 1961(5) (defining "pattern of racketeering activity" to require at least two acts of racketeering activity within a ten year period).

Donato denies the allegations in the complaint and argues that the complaint describes only "minor involvement" by him in the alleged scheme, and nothing rising to the level of misrepresentation or other unlawful conduct. Donato denies being involved in raising capital for the company, speaking with potential lenders, or negotiating their agreements. He claims that he was "sometimes involved in determining when Atlantic had sufficient funds to make payments to lenders, vendors, etc." and he occasionally communicated with Atlantic's lenders about payments. *Def.'s Br.* at 3. Donato argues that the allegations set forth in the complaint center

around his former colleague, Erik Perry, who the Bentons allege was the one communicating with them prior to their loans and who allegedly provided them with false information. Indeed, Donato argues that even the limited contact he is alleged to have had with the Bentons and their loans was at the request or direction of Perry.

Therefore, Donato contends that he has a meritorious defense to Counts V, VI, and VII, reflecting allegations of misrepresentation and fraud, because the complaint fails to allege any misrepresentations made by Donato. The Bentons counter by arguing that they have alleged two separate misrepresentations made directly by Donato, one occasion where Donato called Mr. Benton to explain the delay in a particular payment, and another where Donato "presented a phony repayment schedule to Mr. Benton." *Pls.' Resp.* at 16 (citing *Compl.* ¶¶ 44, 51). Donato ought to have the opportunity to challenge on the merits allegations that he made any false or misleading statements of material fact, intentional or otherwise, at trial.

Donato further contends that he has a meritorious defense to a civil RICO claim because the plaintiffs will be unable to prove the requisite intent and misrepresentation necessary to support the predicate acts of wire fraud. Moreover, Donato argues that the Bentons cannot show detrimental reliance on anything he said or did, and therefore, they cannot succeed in a RICO action against him. The Bentons state that they have alleged a civil RICO claim against Donato by setting forth allegations of misrepresentations made by Donato and Donato's colleagues which, in combination with an alleged admission by Perry that the company engaged in fraud, sufficiently demonstrate that "the company as a whole was engaged in 'racketeering' activity for purposes of RICO." *Pls.' Resp.* at 18. Because Donato was involved in the "operation or management" of the company, and the company was engaged in a pattern of racketeering activity, Donato is liable under RICO. *Id.* at 17 (citing *Reeves v. Ernst & Young*, 113 S. Ct. 1163

6

(1993)).  Therefore, even if Donato's defense was true, and he had no knowledge of the company's fraud, Donato would be liable.

To succeed on a RICO claim under § 1962(c) against Donato, the Bentons will have to establish several elements:  (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010).  Moreover, this Circuit has held that, "simply pleading that a defendant 'participated in the operation or management' of an enterprise . . . is not enough to make out a violation of § 1962(c)."  *Id.* at 371.  Rather, the "inquiry must be whether the defendant participated in the 'operation or management' of an enterprise's affairs, and if so, whether he did so 'through a pattern of racketeering activity.'"  *Id.* (applying *Reeves*).  In other words, the Bentons must demonstrate at trial not only the predicate acts of mail or wire fraud, but also a nexus between that racketeering activity and the defendant's participation in the enterprise's affairs.  At this juncture, it is sufficient for Donato to deny his own commission of any fraudulent conduct and his lack of knowledge as to whether anyone else in the company was involved in an illegal scheme.

Finally, I find that plaintiffs would not be so prejudiced that it would preclude setting aside the default judgment and trying this case on its merits.  Prejudice arises when the plaintiff's claim would be materially impaired because of the "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the entry of default."  *Mike Rosen & Assoc., P.C. v. Omega Builders, Ltd.*, 940 F. Supp. 115, 118 (E.D. Pa. 1996) (internal quotations and citations omitted).  The Bentons' claims of prejudice, including reliance on the judgment, manifested by the expenditures they have made in trying to collect their judgment against

Donato, and the possibility that obtaining relevant evidence now due to Atlantic's bankruptcy will be more difficult, do not persuade me against reopening the default judgment.

In sum, consideration of all relevant factors weighs in favor of setting aside the default judgment.  The parties have raised several other issues surrounding the opening of the judgment, which, if necessary, can be discussed at a later time.  An appropriate order follows.